IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Kimberly Mae Garrison, | : | |
| Plaintiff | | Civil Action 2:10-cv-619 |
| | : | |
| v. | | Judge Frost |
| | : | |
| Michael J. Astrue, | | Magistrate Judge Abel |
| Commissioner of Social Security, | : | |
| Defendant | | |
| | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Kimberly Mae Garrison brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance benefits.  This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff Garrison maintains that she became disabled on November 21, 2006, at age 44, due to chronic and severe migraine headaches, neck pain, low back and sacral pain, fibromyalgia, anxiety and difficulty sleeping, depressive neurosis, dizziness, and painful muscle spasms in the low back and legs.  (Plaintiff's November 18, 2010 Statement of Errors, Doc. 12, Page ID# 859; *cf.,* Administrative Record, Doc. 9, Page ID# 227-35, 252.)  The administrative law judge found that Garrison could not perform her previous work, but that she retains the ability to perform a limited range of light exertional work.  (Doc. 9, Page ID# 106, 111.)

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The decision of the administrative law judge is not supported by substantial evidence.

- The evidence of record at the time of the decision of the administrative law judge was not evaluated as a whole. The administrative law judge ignored critical evidence without a substantial foundation or rationale.

- The evidence submitted to the Appeals Council should further fulfill the Commissioner's requirement of substantial evidence to support a finding of severe impairments and therefore disability.

- The administrative law judge's failure to recognize the extent of plaintiff's fibromyalgia, sacroiliitis, neck pain, back pain, migraine headaches, anxiety, etc. is built upon the administrative law judge's failure to completely review and recognize all of the evidence of record.

- The administrative law judge's credibility assessment is in conflict with Sixth Circuit case law.

- The administrative law judge's credibility assessment is not based on the record as a whole. Therefore, it cannot stand as it is not supported by substantial evidence.

**Procedural History.** Plaintiff Garrison filed her application for disability

insurance benefits on April 18, 2007,  alleging that she been disabled since November

21, 2006.  (Page ID# 227-35.)  The application was denied initially and upon

reconsideration.  (Page ID# 152-70.)  Plaintiff sought a *de novo* hearing before an

administrative law judge.  (Page ID# 174-75.)  On July 20, 2009, an administrative law

judge held a hearing at which plaintiff, represented by counsel, appeared and testified.

(Page ID# 129-142.)  A vocational expert also testified.  (Page ID# 142-49.)  On August 6,

2009, the administrative law judge issued a decision finding that Garrison was not

disabled within the meaning of the Act.  (Page ID# 102–13.)  On June 10, 2010, the
Appeals Council denied plaintiff's request for review and adopted the administrative
law judge's decision as the final decision of the Commissioner of Social Security.  (Page
ID# 89-93.)

**Age, Education, and Work Experience.** Plaintiff Garrison was born in 1962 and
was 44 years old on the alleged disability onset date.  (Page ID# 248.)  She has a GED
and attended 2 years of collage, earning an associates degree in computer training.  She
is also a certified nurse's aide.  (Page ID# 259-60, 418.)  She has past relevant work
experience as a certified nurse's aide and as a cashier.  (Page ID# 262.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized
Garrison's testimony at the administrative hearing as follows:

> The claimant testified that she has migraine headaches with periods
> of confusion four times a week lasting from four hours to three
> days.  She testified that she has periods of dizziness that happen
> daily and last from 45 minutes to all day long.  She testified that she
> also has pain in her sacroiliac joint, low back, and neck.  The
> claimant testified that she has fatigue, problems falling, and
> difficulty walking.  She also testified that she can do no activity for
> more than ten minutes before she must lie down.

(Page ID# 106.)

**Medical Evidence of Record.**  The relevant medical evidence of record is
summarized as follows:

Sarjit Singh, M.D.  Garrison first saw Dr. Singh in 1986 when she was 23 years
old with a history of recurrent numbness and tingling in her left leg.  Dr. Singh

diagnosed crossed leg peroneal nerve palsy and prescribed medication.  (Page ID# 375, 380-81.)  In 1988, Garrison was seen for recurrent headaches.  (Page ID# 378-79.)  An electroencephalogy (EEG) taken in 1992 was normal. (Page ID# 377.)  An MRI of Garrison's lumbar spine and brain, both taken in 2001 were normal. (Page ID# 374, 376.)  From April to December 2006, Garrison complained of headaches, low back pain and neck pain; Dr. Singh prescribed medication.  (Page ID# 338-51.)  MRIs of Garrison's lumbar spine taken in October 2006 and December 2006, both showed a small disc protrusion or bulge at L4-5.  (Page ID# 369-70.)

The last treatment note from Dr. Singh is dated March 2007, wherein Garrison complained about headaches and back pain.  Dr. Singh prescribed medication.  (Page ID# 336-37.)

Trinity Medical Center.  Garrison presented to the emergency room numerous times between February 2006 and March 2007 with complaints of headache and dizziness; she was given medication and discharged. (Page ID# 382-409.)  A CT scan of Garrison's brain taken in November 2006 was negative.  (Page ID# 403.)  In February 2007, Garrison complained of a week-long headache, and anxiety.  (Page ID# 384-85.)  Garrison was given medication.  The emergency room physician reported a disagreement regarding Garrison's demand for additional medication and his refusal to give her an additional dose of Dilaudid.  *Id.*

Garrison also went to the emergency room in October 2007, with complaint of nausea and dizziness.  (Page ID# 550-61.)  She initially signed out against medical

advice due to a smoking issue, but returned when she became vertiginous and nauseated.  (Page ID# 559.)  Upon examination of Garrison's extremities, she had no joint swelling or tenderness.  (Page ID# 560.)  A CT scan of her head was negative. (Page ID# 565.)  She was diagnosed with migraine-related vertigo.  (Page ID# 554.)

Weirton Medical Center.  Garrison was seen in emergency room in September 2006, for back pain, leg tingling as well as a headache.  She was given medication and discharged.  (Page ID# 751-58.)

Garrison was seen in the emergency room with a headache three times in July and August, 2007.  She was given medication each time.  (Page ID# 713-35.)  Garrison went to the emergency room with a headache in February 2008.  (Page ID# 692-98.)

She returned to the emergency room in June 2008, with a complaint of migraine headache.  Examination revealed that she had good range of motion in her extremities and full strength.  (Page ID# 687.)

Garrison presented to the emergency room in November 2008 and February 2009 with headaches complaints.  When Garrison's walking was observed, she had no gait disturbance. (Page ID# 664-84.)

Physical Therapy Associates.  Garrison went to physical therapy in November and December 2006.  (Page ID# 317-35.)  She presented with difficulty and limitations based on her complaints with dressing, getting in/out of bed/tub/car, ambulating stairs, sitting, standing, sleeping, kneel/squat, most work related, home making and recreational activities.  On December 6, 2006, Garrison reported improvement and was

feeling much better.  However, she was ordered to push a bed at work and aggravated her back.  She reported severe pain ever since.  At that time, Garrison was on restricted work duty with a 10 lb. lifting limit.  The physical therapist noted that Garrison continued to have difficulty with sitting, driving, ambulating, bending, pushing, pulling, lifting and most home ADL's (activities of daily living).  Garrison was discharged in January 2007, being last seen on December 18, 2006 secondary to losing insurance coverage.  (Page ID# 333.)

Jeffrey Starre, M.D.  The record contains treatment notes from primary care physician, Dr. Starre dated February 2007 through June 2009.  Her complaints included back/leg pain, dizziness, headaches, nausea and anxiety.  (Page ID# 621-49.)  Dr. Starre prescribed a variety of medication.  In February 2007, Dr. Starre diagnosed Garrison with chronic lumbar pain, migraines and insomnia.  (Page ID# 625.)  In August 2008, he diagnosed stiff person syndrome, chronic sacroiliac dysfunction and anxiety without panic.  *Id.*  In June 2009, Dr. Starre diagnosed Garrison with sacroiliac dysfunction and fibromyalgia, but noted her "exaggerated tenderness"of right SI joint and lower extremity on examination.  (Page ID# 821-22.)

Jorge Roig, M.D./Trinity Health Center Pain Center.  Garrison saw Dr. Roig in February 2007.  (Page ID# 387-88.)  She rated her back pain at four out of ten in intensity.  (Page ID# 387.)  Examination revealed full strength, normal sensation, and the ability to stand on her toes, but not on her heels secondary to pain in her right leg. She was able to stand on one leg.  Palpation examination revealed severe tenderness on

6

Garrison's right side.  *Id.*  Dr. Roig diagnosed spinal arthritis, a herniated disc, and

myofascial pain.  He performed a trigger point injection. (Page ID# 388.)

When Garrison saw Dr. Roig in March 2007, he indicated that lumbar, pelvic,

and sacroiliac joint MRIs "revealed no dysfunction."  (Page ID# 382.)  Examination

revealed that Garrison walked "without any antalgia" and "when I just touch her skin

there is a lot of pain."  *Id.*  Dr. Roig diagnosed lumbar spine pain.  *Id.*

<u>Felix Brizuela, D.O.</u>  Garrison was examined by neurologist, Dr. Brizuela in April

2007, for low back pain and headaches.  (Page ID# 412-16.)   She reported three types of

headaches - mild, moderate and severe - and that the severe ones cause her to have to

lie down, associated with nausea and vomiting.  She was taking Vicodin, as needed, 2-3

Fioricets a day, Valium, Excederin Migraine, as needed, and Elavil at bedtime. Garrison

also reported a history of back pain which would shoot down the back of the right leg.

The pain was refractory to opioid analgesics and aggravated by sitting and standing.

Dr. Brizuela noted, "She is basically not able to work." During the examination,

Garrison refused to sit down.  Dr. Brizuela found severe tenderness and increased

sensitivity to pain in her pelvis, limited flexion in her back and muscle spasms in her

neck.  (Page ID# 413.)  On examination, Garrison had some severe muscle spasm in the

cervical region. Examination of the cranial nerves and a sensory examination was

unremarkable. Reflexes were 2/4. Gait and station were guarded. She had a blunt to

distressed affect. Cognition was normal. Dr. Brizuela provided a sacroiliac joint

injection and recommended additional injections and the possibility of physical therapy

or increased activity. (Page ID# 414.) Dr. Brizuela opined that her sacroiliitis, which he felt was directly related to the November 2006 injury, was now chronic. He reported that Garrison has developed hyperalgesia facilitation or kindling in this region. Dr. Brizuela further reported her headaches were rebound headaches, "but the fact of the matter is that she has not taken six or seven Fioricet a day, which is typical of what I see with the rebound-headache patients." *Id.*

Garrison saw Dr. Brizuela again in June 2007, for Botox. Dr. Brizuela noted he was going to try to get Myobloc approved. Garrison was noted to be suffering from lower back pain and head pain on the right side of her head. Examination revealed tenderness in the right splenius capitis muscle, clearly myofascial pain, according to Dr. Brizuela. Dr. Brizuela gave Garrison another SI joint injection. (Page ID# 516.)

In September 2007, Dr. Brizuela "warned [Garrison] to please stop taking the Fioricet since if she keeps taking the Fioricet we are not going to be able to [sic] her headaches." (Page ID# 514.) An evoked potential study in October 2007 was normal. (Page ID# 602.)

A brain MRI taken in October 2007, showed nonspecific multiple areas of demyelination throughout the gray white matter junction. There were no areas of active demyelination or ischemia noted. (Page ID# 548.) Dr. Brizuela also examined Garrison while she was hospitalized in October 2007. (Page ID# 551-53.) He found tenderness in neck and shoulders. *Id.* He noted the two recent MRIs showed a normal lower spine. *Id.*

8

Dr. Brizuela indicated in February 2008, that he had diagnosed Garrison with "stiff person syndrome" the prior December.  (Page ID# 309.)

The Cleveland Clinic.  Garrison went to the emergency room in May 2008 for "follow up and referral to Neurology" related to her complaints of headaches. However, she was not complaining of a headache in the emergency room and her physical examination was normal.  (Page ID# 763-67.)

Neurology Department.  On January 19, 2009, Garrison was evaluated in the Neurology Department for headaches which were described as pressure and throbbing squeezing with a pain level at ten out of ten in intensity.  (Page ID# 793-97.) Although she did not always note a trigger for the headaches, she knew that they were triggered by stress and video displays. Accompanying symptoms included nausea, vomiting, vertigo, weakness, blurred vision and confusion.  *Id.*  An MRI of the brain taken that day showed mild scattered nonspecific dominant subcortical white matter changes; small focal abnormality dorsal midbrain; nonspecific pattern and configuration; and midbrain lesion which raised the possibility of multiple sclerosis. (Page ID#  815-16.)  Dr. Gretter, the neurologist, noted that she had normal gait and station; was able to walk on heels and toes without difficulty; had full strength in her arms and legs; and had full range of motion in all joints.  (Page ID# 795.)  He diagnosed her with chronic daily headaches with medication overuse transformed migraine.  *Id.*

Based on the above MRI,  Dr. Bermel of the Mellen Center for Multiple Sclerosis examined Garrison and noted that her gait was normal and that she could hop on either

9

foot without difficulty.  Dr. Bermel concluded that the abnormalities on the brain MRI
are attributable to complicated migraines rather than to any demyelinating disease.  He
further noted that the white matter lesions on the MRI could be due to a vascular
phenomenon, with her risk factors including chronic cigarette smoking and prior
cocaine exposure.  Dr. Bermel also noted that it was unlikely that Garrison had stiff
person syndrome.  (Page ID# 783-87.)

>> Spine Institute.  Garrison saw Edward Capulong, M.D. in February 2009,
with complaints of back pain.  (Page ID# 777-80.)  She also stated that she had been
diagnosed with fibromyalgia by a rheumatologist.  *Id.*  Examination revealed normal
range of motion in her hips; slight tenderness in her sacroiliac joints; decreased range of
motion in her back; antalgic gait and multiple tender points.  (Page ID# 779.)  Dr.
Capulong diagnosed lumbar spondylosis and chronic pain, but concluded that "with
diffuse pain symptoms, I doubt that her spinal issues are the predominant problem."
Dr. Capulong recommended chronic pain rehabilitation program.  (Page ID# 780.)

An x-ray of Garrison's lumbar spine taken on February 12, 2009, revealed
degenerative changes at multiple levels as well as degenerative arthritis in the hips, left
greater than right.  (Page ID# 813-15.)

On February 25, 2009, Dr. Capulong reported Garrison has no gait abnormality.
(Page ID# 804-06.)  An MRI of the cervical spine taken that day revealed only mild
degenerative disc disease with no narrowing.  (Page ID# 808-09.)

On April 27, 2009, Garrison described her back symptoms as constant and sharp

pain associated with radiation into her right lower extremity.  Examination of her spine revealed decreased range of motion on all directions and tenderness at the cervical, thoracic and lumbar spinous and/or paraspinal muscles.  She was unable to complete Faber's test secondary to significant pain.  Multiple tender points were found including bilateral hips, trapezius bilaterally with most joints tender to palpation.  Her gait was antalgic. Dr. Capulong diagnosed chronic pain, myofascial pain and lumbar spondylosis.  (Page ID# 777-79.)

Teresita Cruz, M.D.  In July 2007, state agency reviewing physician, Dr. Cruz opined that Garrison could: lift ten pounds frequently and twenty pounds occasionally; stand/walk and sit for about six hours each out of eight; occasionally stoop and climb ladders, ropes and scaffolds; frequently climb ramps and stairs; and not work around hazards.  (Page ID# 469-76.)  Another state agency reviewing physician, Dr. Villanueva affirmed Dr. Cruz's opinion in December 2007.  (Page ID# 576.)

David R. Bousquet, M.Ed. On June 22, 2007, Bousquet examined Garrison at the request of Ohio Bureau of Disability Determination.  (Page ID# 417-23.)  Garrison drove herself to the examination.  During the interview, Bousquet noted that Garrison exhibited pain behavior such as facial reddening, grimacing and restlessness and fidgety.  (Page ID#  419.)  Garrison reported that she could not sit and she stood throughout the interview.  As to her daily activities, she reported that she lives with her daughter.  She does very little housework, she tries to help with dishes and sort the laundry.  She does do dusting and will occasionally help with cooking.  Bousquet

11

diagnosed a major depressive disorder, dysthymic disorder, anxiety disorder and somatoform disorder.  (Page ID# 421.)

Douglas Pawlarczyk, Ph.D.  A Mental Residual Functional Capacity Report was completed by Douglas Pawlarczyk, Ph.D. on July 24, 2007.  Dr. Pawlarczyk concluded that his review of the file suggests that Garrison had some serious limitations, but significant functional capacity remained.  Her cognitive abilities were completely intact.  She was able to attend and concentrate on most tasks.  Garrison socialized on a regular basis on the phone and at the sportsmen's club.  Dr. Pawlarczyk recommended that Garrison not work with the public.  He opined that Garrison was markedly impaired in her ability to deal with stress and pressure associated with day-to-day work activity.  He based his opinion on the restricted report of daily activities given to Bousquet.  According to Dr. Pawlarczyk, Garrison is able to leave the house and take care of her own and her daughter's needs as she is physically able.  Dr. Pawlarczyk opined that Garrison would be able to perform moderately complex tasks in a work environment with only superficial social interaction and no strict production quotas.  Dr. Pawlarczyk concluded that Garrison's statements are partially credible, due to restricted ADL reported to Bousquet as compared to returned ADL forms.  (Page ID# 425-42.)

**Administrative Law Judge's Findings.**

1.     The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.     The claimant has not engaged in substantial gainful activity since November 21, 2006, the alleged onset date. (20 CFR 404.1571 *et seq.*).

3. Since November 21, 2006, the claimant has had the following medically determinable impairments that, either individually or in combination, are "severe" and have significantly limited his ability to perform basic work activities for a period of at least 12 consecutive months: complicated migraines; mild degenerative changes of the lumbar spine with spondylosis; mild degenerative disc disease of the cervical spine; and chronic pain syndrome/myofascial pain syndrome. (20 CFR 404.1521 *et seq.*).

4. Since November 21, 2006, the claimant has had no medically determinable impairments, whether considered individually or in combination, that have met or medically equaled the severity criteria for any of the listed impairments in Appendix 1, Subpart P, Regulation #4 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Since November 21, 2006, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that: permits a sit/stand option; requires no balancing or climbing of ladders, ropes or scaffolds, or more than occasional performance of other postural movements (i.e. climbing of ramps and stairs, stooping, kneeling, crouching, and crawling); requires no exposure to temperature extremes, wet or humid conditions, or hazards; is low stress with no production or assembly line pace and no independent decision making responsibilities; is limited to unskilled, routine and repetitive instructions and tasks; and involves no interaction with the general public and no more than occasional interaction with coworkers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 15, 1962 and was 44 years old on the alleged disability onset date, which is defined for decisional purposes as a younger individual. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404,

13

Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual
       functional capacity, there are jobs that exist in significant numbers in the
       national economy that the claimant can perform (20 CFR 404.1569 and
       404.1569a).

11.    The claimant has not been under a disability, as defined in the Social
       Security Act, from November 21, 2006, through the date of this decision
       (20 CFR 404.1520(g)).

(Page ID# 104-13.)

    **Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"more than a mere scintilla." *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976).  The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "take into account whatever in the record fairly detracts from its weight." *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

    **Plaintiff's Arguments.**  Plaintiff's numerous arguments can be broken down into

14

two main contentions: 1) the administrative law judge failed to properly consider the complete record in determining plaintiff's residual functional capacity, including not finding fibromyalgia a severe impairment; and 2) the administrative law judge failed to properly assess plaintiff's credibility.

**Analysis.**

Assessing Residual Functional Capacity. The administrative law judge considered the evidence of record and concluded that plaintiff's complicated migraines; mild degenerative changes of the lumbar spine with spondylosis; mild degenerative disc disease of the cervical spine; and chronic pain syndrome/myofascial pain syndrome were "severe" impairments within the meaning of the Act, but did not meet or equal one of the impairments listed in the Listing of Impairments, 20 CFR Part 404, Subpart P, Appendix 1.  The administrative law judge found that plaintiff had the residual functional capacity to perform light exertional work, that: permits a sit/stand option; requires no balancing or climbing of ladders, ropes or scaffolds, or more than occasional performance of other postural movements (i.e. climbing of ramps and stairs, stooping, kneeling, crouching, and crawling); requires no exposure to temperature extremes, wet or humid conditions, or hazards; is low stress with no production or assembly line pace and no independent decision making responsibilities; is limited to unskilled, routine and repetitive instructions and tasks; and involves no interaction with the general public and no more than occasional interaction with coworkers and supervisors.

15

In making this residual functional capacity finding, the administrative law judge noted that since Garrison's November 2006 injury at work, her pain complaints have escalated dramatically with no explanation.  (Page ID# 107.)  The administrative law judge considered the MRI performed in October 2006, before her November 2006 injury, which showed a small disc bulge at L4-5.  (Page ID# 370.)  A December 2006 MRI, performed after her injury, showed no changes from her pre-injury findings.  (Page ID# 369.)  Lumbar, pelvic, and sacroiliac joint MRIs performed in February 2007, were all normal and showed "no dysfunction."  (Page ID# 382.)  A repeat lumbar MRI and x-rays in February 2009 showed mild degenerative changes with no narrowing.  (Page ID# 813-15.)

The administrative law judge's finding that Garrison could perform light work is supported by substantial evidence.  As noted above, Garrison saw Dr. Roig, a pain specialist, in March 2007, who diagnosed lumbar spine pain.  (Page ID# 382.)  In April 2007, even though Dr. Brizuela noted that Garrison was distressed and refused to sit down during the examination, he also noted that Garrison's MRI was normal and his physical examination was normal except for asserted complaints of pain.  (Page ID# 412-16.)  Garrison's primary care physician, Dr. Starre, diagnosed sacroiliitis due to complaints of extreme tenderness at the sacroiliac joint.  (Page ID# 821-22.)  When she was evaluated at the Cleveland Clinic in February 2009, Dr. Capulong, diagnosed lumbar spondylosis and chronic pain, but concluded that "with diffuse pain symptoms, I doubt that her spinal issues are the predominant problem." Dr. Capulong

16

recommended chronic pain rehabilitation program.  (Page ID# 780.)  A cervical spine MRI in February 2009, revealed only mild degenerative disc disease.  (Page ID# 808-09.) The administrative law judge found that Garrison's objective medical findings are far out of proportion to her subjective complaints, and do not support allegations of disabling pain.  (Page ID# 107.)

Further support for the administrative law judge's residual functional capacity finding is found in the fact that no treating physician has ever opined that plaintiff's impairments rendered her disabled.

The administrative law judge also considered plaintiff's combined impairments. In addition to the impairments he found severe, the administrative law judge also considered plaintiff's diagnoses of multiple sclerosis, stiff person's syndrome, sacroiliitis, coronary artery disease, fibromyalgia, piriformis syndrome, irritable bowel syndrome, somatoform disorder, cervical dystopia, depression and anxiety in reaching the residual functional capacity found above.  (Page ID# 104-05.)

Severe Impairment.  Garrison next contends the administrative law judge erred by not finding her fibromyalgia to be a severe impairment.  A severe impairment is one which significantly limits the physical or mental ability to perform basic work activities. See, 20 C.F.R. § 404.1521.  An impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

17

irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted).

An administrative law judge does not commit reversible error in finding a non-severe impairment where the administrative law judge determines that Garrison has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation since the administrative law judge considers all impairments, including non-severe impairments, in determining residual functional capacity. *See, Pompa v. Comm'r of Soc. Sec.,* 2003 WL 21949797, *1 (6th Cir. Aug. 11, 2003); *Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

In *Maziarz,* the administrative law judge determined that the claimant suffered from several severe cardiac impairments. The plaintiff argued the administrative law judge erred by not finding his cervical condition to be a severe impairment at step two of the sequential evaluation process. The *Maziarz* Court found it "unnecessary to decide" whether the administrative law judge erred in failing to find that the claimant's cervical condition constituted a severe impairment at step two because the administrative law judge continued with the remaining steps of the sequential evaluation process and considered the plaintiff's cervical condition in determining whether he retained a sufficient residual functional capacity to allow him to perform substantial gainful activity. Therefore, the Court concluded that any alleged error at step two was harmless. As long as the administrative law judge considers all of a claimant's impairments in the remaining steps of the disability determination, the

18

administrative law judge 's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Maziarz*, 837 F.2d at 244.  In other words, if an administrative law judge errs by not including a particular impairment as an additional severe impairment in step two of his analysis, the error is harmless as long as the administrative law judge found at least one severe impairment, continued the sequential analysis, and ultimately addressed all of the claimant's impairments in determining his residual functional capacity.  *See Swartz v. Barnhart*, 188 Fed. Appx. 361, 368, 2006 WL 1972086, 6 (6th Cir. 2006) (citing *Maziarz*).

In the present case, the administrative law judge noted that Garrison alleged that she has fibromyalgia, and although the diagnosis is mentioned in a historical context, there is nothing in the record that indicates that Garrison has been formally diagnosed with fibromyalgia.  There is no examination by a rheumatologist, no tender point examination, and after extensive evaluation, no fibromyalgia diagnosis by the Cleveland Clinic.  (Page ID# 105.)  Records from Dr. Carmen E. Gota of the Rheumatology Department of the Cleveland Clinic dated April 27, 2009, were not before the administrative law judge, but were submitted to the Appeals Council. However, since the Appeals Council denied plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of the administrative law judge's decision. *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

As the Commissioner correctly notes, plaintiff has not explained how any alleged

19

evidence of fibromyalgia is different from the chronic pain syndrome/myofascial pain syndrome evidence the administrative law judge considered in addressing Garrison's pain complaints.

      <u>Subjective Symptoms: Credibility Determination</u>. It is, of course, for the administrative law judge, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the administrative law judge and the administrative law judge's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

      However, the administrative law judge is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the administrative law judge must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the

entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In this case, although the administrative law judge did find that plaintiff had impairments which could reasonably be expected to produce pain, he also found that Garrison's statements regarding her chronic body pain symptoms, limitations, and near complete lack of activity are so grossly out of proportion to the objective medical evidence and so inconsistent with her medical treatment and the opinions of her physicians, that her credibility on other issues, where there may be some supporting evidence, such as her migraine headaches, is significantly negatively impacted. Thus, the administrative law judge carefully considered the evidence, applied the appropriate standard for considering plaintiff's subjective allegations and reached a conclusion that enjoys substantial support in the record.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary

21

judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. r. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel_____
United States Magistrate Judge
